# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 1, 2018        Decided January 25, 2019

No. 14-1271

HOOPA VALLEY TRIBE,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

AMERICAN RIVERS, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Thane D. Somerville* argued the cause for petitioner. With him on the briefs was *Thomas P. Schlosser*.

*Carol J. Banta*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. On the brief were *James P. Danly*, General Counsel, *Robert H. Solomon*, Solicitor, *Robert M. Kennedy*, Senior Attorney, and *Ross R. Fulton*, Attorney.

2

*Richard Roos-Collins, Julie Gantenbein*, *Stuart Somach*, *Michael A. Swiger*, and *Sharon L. White* were on the briefs for intervenors American Rivers, et al. in support of respondent.

*Michael A. Swiger* and *Sharon L. White* were on the brief for intervenor Pacificorp in support of respondent. *Charles R. Sensiba* entered an appearance.

*George J. Mannina Jr.* was on the brief for intervenor-respondent Siskiyou County, California. *Ashley Remillard* and *Paul S. Weiland* entered appearances.

*Robert W. Ferguson*, Attorney General, *Sonia A. Wolfman*, Assistant Attorney General, Office of the Attorney General for the State of Washington, *Lawrence G. Wasden*, Attorney General, Office of the Attorney General for the State of Idaho, *Joseph A. Foster*, Attorney General, Office of the Attorney General for the State of New Hampshire, *Douglas S. Chin*, Attorney General, Office of the Attorney General for the State of Hawaii, *Janet T. Mills*, Attorney General, Office of the Attorney General for the State of Maine, *Peter K. Michael*, Attorney General, Office of the Attorney General for the State of Wyoming, *Eric T. Schneiderman*, Attorney General at the time the brief was filed, Office of the Attorney General for the State of New York, and *Sean D. Reyes*, Attorney General, Office of the Attorney General for the State of Utah, were on the brief for *amici curiae* States of Washington, et al. in support of intervenors-respondents American Rivers, et al.

*Kamala D. Harris*, Attorney General at the time the brief was filed, Office of the Attorney General for the State of California, *Robert W. Byrne*, Senior Assistant Attorney General, *Eric M. Katz*, Supervising Deputy Attorney General, and *Ross H. Hirsch* and *Adam L. Levitan*, Deputy Attorneys

General, were on the brief for *amicus curiae* California State Water Resources Control Board in support of respondent.

*Ellen F. Rosenblum*, Attorney General, and *Paul Garrahan*, Attorney-In-Charge, Office of the Attorney General for the State of Oregon, were on the brief for *amicus curiae* The State of Oregon in support of respondent.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Hoopa Valley Tribe ("Hoopa") petitions for review of Federal Energy Regulatory Commission ("FERC") orders, which found (1) that California and Oregon had not waived their water quality certification authority under Section 401 of the Clean Water Act ("CWA") and (2) that PacifiCorp had diligently prosecuted its relicensing application for the Klamath Hydroelectric Project ("Project"). Whereas statutory waiver is mandated after a request has been pending for more than one year, the issue in this case is whether states waive Section 401 authority by deferring review and agreeing with a licensee to treat repeatedly withdrawn and resubmitted water quality certification requests as new requests. We conclude that the withdrawal-and-resubmission of water quality certification requests does not trigger new statutory periods of review. Therefore, we grant the petition and vacate the orders under review.

4

## I. BACKGROUND

### A. Statutory Background

Under Subchapter I of the Federal Power Act ("FPA"), 16 U.S.C. §§ 791a–823g, Congress granted FERC authority to regulate the licensing, conditioning, and development of hydropower projects on navigable waters. Under Section 401 of the CWA, any applicant seeking a federal license for an activity that "may result in any discharge into the navigable waters" must first seek water quality certifications from the controlling states. *See* 33 U.S.C. § 1341(a)(1). Thus, a state's water quality review serves as a precondition to any federal hydropower license issued by FERC. The statute further provides that state certification requirements "shall be waived with respect to such Federal application" if the state "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request." *See id.* "[T]he purpose of the waiver provision is to prevent a State from indefinitely delaying a federal licensing proceeding by failing to issue a timely water quality certification under Section 401." *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 972 (D.C. Cir. 2011).

### B. History of the Klamath Hydroelectric Project

In this case, the hydropower project in question consists of a series of dams along the Klamath River in California and Oregon, which were originally licensed to a predecessor of PacifiCorp in 1954. Since the original license expired in 2006, PacifiCorp has continued to operate the Project on annual interim licenses pending the broader licensing process. Due to the age of the Project, the dams are not in compliance with modern environmental standards. Since modernizing the dams was presumably not cost-effective, PacifiCorp sought to

5

decommission the lower dams. In 2004, PacifiCorp filed for relicensing with FERC, with a proposal to relicense the upper dams and decommission the remainder. All milestones for relicensing have been met except for the states' water quality certifications under Section 401.

In 2008, a consortium of parties—California, Oregon, Native American tribes, farmers, ranchers, conservation groups, fishermen, and PacifiCorp—began settlement negotiations to resolve the procedures and the risks associated with the dams' decommissioning. These negotiations culminated in a formal agreement in 2010, the Klamath Hydroelectric Settlement Agreement ("KHSA" or the "Agreement"), imposing on PacifiCorp a series of interim environmental measures and funding obligations, while targeting a 2020 decommission date. Under the KHSA, the states and PacifiCorp agreed to defer the one-year statutory limit for Section 401 approval by annually withdrawing-and-resubmitting the water quality certification requests that serve as a pre-requisite to FERC's overarching review. The Agreement explicitly required abeyance of all state permitting reviews:

> Within 30 days of the Effective Date, the Parties, except ODEQ [Oregon Department of Environmental Quality], will request to the California State Water Resources Control Board and the Oregon Department of Environmental Quality that permitting and environmental review for PacifiCorp's FERC Project No. 2082 [Klamath Hydroelectric Project] licensing activities, including but not limited to water quality certifications under Section 401 of the CWA and review under CEQA [California Environmental Quality Act], will be held in

> abeyance during the Interim Period under this Settlement. PacifiCorp shall withdraw and re-file its applications for Section 401 certifications as necessary to avoid the certifications being deemed waived under the CWA during the Interim Period.

*See* KHSA at 42.

The parties to the KHSA agreed to a number of preconditions for decommissioning, the most relevant of which was the securing of federal funds, which never occurred. Consequently, on April 6, 2016, a subset of parties from the original KHSA agreed to an "Amended KHSA," which created an alternative plan for decommissioning that contemplated the transfer of licensing to a company, Klamath River Renewal Corporation ("KRRC"), formed by the signatories of the Amended KHSA in order to limit potential liability that existing parties anticipated from decommissioning the dams. Of relevance, Hoopa—whose reservation is downstream of the Project—was not a party to either the KHSA or the Amended KHSA.

On September 23, 2016, PacifiCorp filed for an amended license to enable transfer of the dams to KRRC. Having never previously considered the transfer of a license for the sole purpose of decommissioning, and based on legal, technical, and financial concerns, FERC chose to separately review the applications for (1) amendment and (2) transfer. On March 15, 2018, FERC approved splitting the lower dams to a separate license, but has yet to approve transfer of that license. PacifiCorp remains the licensee for both of these newly split licenses.

### C. Procedural History

On May 25, 2012, Hoopa petitioned FERC for a declaratory order that California and Oregon had waived their Section 401 authority and that PacifiCorp had correspondingly failed to diligently prosecute its licensing application for the Project. On June 19, 2014, FERC denied that petition. On July 18, 2014, Hoopa requested rehearing on its original petition, and FERC denied that request on October 16, 2014. Subsequently, on December 9, 2014, Hoopa petitioned this Court to review FERC's orders. This Court initially held the case in abeyance once the Amended KHSA was in place. But the decommissioning the agreement contemplated has yet to occur, and in light of Hoopa's pending petition, we removed the case from abeyance on May 9, 2018.

## II. DISCUSSION

We review FERC orders under the Administrative Procedure Act ("APA"), which empowers the Court "to reverse any agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *See, e.g.*, *Wisconsin Valley Improvement v. FERC*, 236 F.3d 738, 742 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). In conducting the review in this case, because FERC is not the agency charged with administering the CWA, the Court owes no deference to its interpretation of Section 401 or its conclusion regarding the states' waiver. *See Alcoa Power*, 643 F.3d at 972.

### A. Sovereign Immunity

The state of Oregon, an amicus curiae, has challenged this Court's jurisdiction over the instant matter. Specifically, California and Oregon have exercised their sovereign

immunity under the Eleventh Amendment by refusing to intervene in this review. Oregon avers a status as an indispensable party because this review entails a potential finding of the states' waiver of their Section 401 authority. Thus, Oregon asserts that this case must be dismissed, relying on Fed. R. Civ. P. 19.

However, California and Oregon are not indispensable parties to the instant case. Contrary to Oregon's argument, Fed. R. Civ. P. 19 does not govern this joinder issue. *See Int'l Union, United Auto. v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Rather, as an appellate court reviewing an agency action, we look to Fed. R. App. P. 15. Rule 15 only requires the respondent federal agency as a necessary party to a petition for review—joinder of no other party is required. *See* Fed. R. App. P. 15. With regard to sovereign immunity generally, Oregon's position is incompatible with the precepts of federalism and this Court's prior precedent. Hoopa's petition does not involve a state's certification decision or a state's application of state law, but rather *a federal agency's order*, a matter explicitly within the purview of this Court when petitioned by an aggrieved party. *See* 16 U.S.C. § 825*l*(b). Indeed, FERC orders regarding a state's compliance are properly reviewed by federal appeals courts whether or not the state is a party to the review. *See, e.g.*, *City of Tacoma v. FERC*, 460 F.3d 53 (D.C. Cir. 2006). This is especially true, in cases such as this, when the dispositive issue on review is the interpretation of federal law. *See* U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority. . . ."). Accordingly, this Court has jurisdiction over the instant matter, and we shall proceed to the merits of Hoopa's claims.

B.  Waiver under Section 401

Hoopa's petition presents three theories as bases for relief: the states' waiver of their Section 401 authority, PacifiCorp's failure to diligently prosecute its licensing application, and FERC's abdication of its regulatory duty.  However, all of Hoopa's theories are connected.

Resolution of this case requires us to answer a single issue: whether a state waives its Section 401 authority when, pursuant to an agreement between the state and applicant, an applicant repeatedly withdraws-and-resubmits its request for water quality certification over a period of time greater than one year. If this type of coordinated withdrawal-and-resubmission scheme is a permissible manner for tolling a state's one-year waiver period, then (1) California and Oregon did not waive their Section 401 authority; (2) PacifiCorp did not fail to diligently prosecute its application; and (3) FERC did not abdicate its duty.  However, if such a scheme is ineffective, then the states' and licensee's actions were an unsuccessful attempt to circumvent FERC's regulatory authority of whether and when to issue a federal license.

Determining the effectiveness of such a withdrawal-and-resubmission scheme is an undemanding inquiry because Section 401's text is clear.

> If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application.  No license or permit shall be granted until the

> certification required by this section has been obtained or has been waived as provided in the preceding sentence.

*See* 33 U.S.C. § 1341(a)(1). The temporal element imposed by the statute is "within a reasonable period of time," followed by the conditional parenthetical, "(which shall not exceed one year)." *See id.* Thus, while a full year is the absolute maximum, it does not preclude a finding of waiver prior to the passage of a full year. Indeed, the Environmental Protection Agency ("EPA")—the agency charged with administering the CWA—generally finds a state's waiver after only six months. *See* 40 C.F.R. § 121.16.

The pendency of the requests for state certification in this case has far exceeded the one-year maximum. PacifiCorp first filed its requests with the California Water Resources Control Board and the Oregon Department of Environmental Quality in 2006. Now, *more than a decade later*, the states still have not rendered certification decisions. FERC "sympathizes" with Hoopa, noting that the lengthy delay is "regrettable." According to FERC, it is now commonplace for states to use Section 401 to hold federal licensing hostage. At the time of briefing, twenty-seven of the forty-three licensing applications before FERC were awaiting a state's water quality certification, and four of those had been pending for *more than a decade*.

Implicit in the statute's reference "to act on *a request* for certification," the provision applies to a specific request. *See* 33 U.S.C. § 1341(a)(1) (emphasis added). This text cannot be reasonably interpreted to mean that the period of review for one request affects that of any other request. In its decision, FERC used this text to rescue the states from waiver. FERC found that while PacifiCorp's various resubmissions involved the

same Project, each resubmission was an independent request, subject to a new period of review. Thus, FERC averred that the states had not failed to act. In doing so, FERC acted arbitrarily and capriciously.

The record does not indicate that PacifiCorp withdrew its request and submitted a wholly new one in its place, and therefore, we decline to resolve the legitimacy of such an arrangement. We likewise need not determine how different a request must be to constitute a "new request" such that it restarts the one-year clock. This case presents the set of facts in which a licensee entered a written agreement with the reviewing states to delay water quality certification. PacifiCorp's withdrawals-and-resubmissions were not just similar requests, they were not new requests at all. The KHSA makes clear that PacifiCorp never intended to submit a "new request." Indeed, as agreed, before each calendar year had passed, PacifiCorp sent a letter indicating withdrawal of its water quality certification request and resubmission of the very same . . . *in the same one-page letter . . . for more than a decade*. Such an arrangement does not exploit a statutory loophole; it serves to circumvent a congressionally granted authority over the licensing, conditioning, and developing of a hydropower project.

While the statute does not define "failure to act" or "refusal to act," the states' efforts, as dictated by the KHSA, constitute such failure and refusal within the plain meaning of these phrases. Section 401 requires state action within a reasonable period of time, not to exceed one year. California and Oregon's deliberate and contractual idleness defies this requirement. By shelving water quality certifications, the states usurp FERC's control over whether and when a federal license will issue. Thus, if allowed, the withdrawal-and-resubmission scheme could be used to indefinitely delay federal licensing

proceedings and undermine FERC's jurisdiction to regulate such matters.

Congress intended Section 401 to curb a *state's* "dalliance or unreasonable delay." *See, e.g.*, 115 Cong. Rec. 9264 (1969). This Court has repeatedly recognized that the waiver provision was created "to prevent a State from indefinitely delaying a federal licensing proceeding." *See Alcoa Power*, 643 F.3d at 972–73; *Millennium Pipeline Co. v. Seggos*, 860 F.3d 696, 701–02 (D.C. Cir. 2017).

While caselaw offers some guidance regarding a state's waiver, *e.g.*, *North Carolina v. FERC*, 112 F.3d 1175, 1183–85 (D.C. Cir. 1997), this Court has never addressed the specific factual scenario presented in this case, *i.e.*, an applicant agreeing with the reviewing states to exploit the withdrawal-and-resubmission of water quality certification requests over a lengthy period of time. In its supplemental brief, FERC directs the Court's attention to a Second Circuit opinion which suggested, in light of various practical difficulties, that a state could "request that the applicant withdraw and resubmit the application." *See New York State Dep't of Envtl. Conservation v. FERC*, 884 F.3d 450, 455–56 (2d Cir. 2018) (citing *Constitution Pipeline Co., LLC v. New York State Dep't of Envtl. Conservation*, 868 F.3d 87, 94 (2d Cir. 2017)). That suggestion was not central to the court's holding. The *dicta* was offered to rebut the state agency's fears that a one-year review period could result in incomplete applications and premature decisions. *See id.* (identifying denial without prejudice as another alternative).

While it is the role of the legislature, not the judiciary, to resolve such fears, those trepidations are inapplicable to the instant case. The record indicates that PacifiCorp's water quality certification request has been complete and ready for

review for more than a decade. There is no legal basis for recognition of an exception for an individual request made pursuant to a coordinated withdrawal-and-resubmission scheme, and we decline to recognize one that would so readily consume Congress's generally applicable statutory limit. Accordingly, we conclude that California and Oregon have waived their Section 401 authority with regard to the Project.

C. Futility

FERC postulated that a finding of waiver would require the agency to deny PacifiCorp's license. As a result, PacifiCorp would have to file a decommissioning plan for the Klamath dams, and since decommissioning of the Project is an activity that itself would result in a "discharge into the navigable waters," that plan would be subject to its own set of the oft-delayed state water quality certifications. Thus, in a futile sequence of events, the Project would revert back to its present state, only burdened with additional delays.

FERC may be correct that "[i]ndefinite delays in processing [licensing] applications are . . . not in the public interest." *See Georgia-Pacific Corp.*, 35 FERC ¶ 61120, 61248 n.8 (Apr. 25, 1986). However, such practical concerns do not trump express statutory directives. *See supra* Section II.B. Regardless, had FERC properly interpreted Section 401 and found waiver when it first manifested more than a decade ago, decommissioning of the Project might very well be underway.

Further, FERC possesses a critical role in protecting the public interest in hydropower projects. *See* 16 U.S.C. §§ 797(e), 803(a), 808(a). FERC solicits comments from interested parties and holds public meetings. *See, e.g.*, *U.S. Dep't of Interior v. FERC*, 952 F.2d 538, 540 (D.C. Cir. 1992). FERC may also "participate in an advisory role in settlement

discussions or review proposed settlements" for the development or decommissioning of such projects. *See* Settlements in Hydropower Licensing Proceedings under Part I of the Federal Power Act, 116 FERC ¶ 61270, 62086 (Sept. 1, 2006). Here, it did neither. Hoopa's interests are not protected directly as it is not a party to the KHSA or Amended KHSA, nor are its interests protected indirectly through any participation by FERC in those same settlement agreements. Therefore, we disagree that a finding of waiver is futile because, at a minimum, it provides Hoopa and FERC an opportunity to rejoin the bargaining table.

III.    CONCLUSION

For the reasons set forth above, we vacate and remand the rulings under review. FERC shall proceed with its review of, and licensing determination for, the Klamath Hydroelectric Project.