# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 26, 2022          Decided January 24, 2023

No. 20-1277

AMEREN ILLINOIS COMPANY, D/B/A AMEREN ILLINOIS, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

SOUTHWESTERN ELECTRIC COOPERATIVE, ET AL.,
INTERVENORS

———

Consolidated with 20-1450, 21-1154, 21-1254

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*Misha Tseytlin* argued the cause for petitioners. With him on the briefs were *Kevin M. LeRoy*, *Christopher R. Jones*, *Justin T. Golart*, and *Katherine J. O'Konski*.

*Susanna Y. Chu*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Matthew R. Christiansen*, General Counsel, and

*Robert H. Solomon*, Solicitor.  *Anand Viswanathan*, Attorney, entered an appearance.

*Michael Postar* and *Bhaveeta K. Mody* were on the brief for intervenors Southwestern Electric Cooperative, et al. in support of respondent.

Before: PILLARD and KATSAS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*:  The petitions for review seek reversal of a refund order by the Federal Energy Regulatory Commission upon finding a discrepancy in petitioner Ameren Illinois's self-reported operational costs. Instead of reporting construction-related materials and supplies costs on line 5 of page 227 of Form 1, Ameren Illinois reported these costs on line 8 with the result that it over-collected for transmission costs. *Ameren Ill. Co.*, 174 FERC ¶ 61,209, at ¶ 49 (Mar. 18, 2021) ("Refund Order"); *Ameren Ill. Co.*, 177 FERC ¶ 61,107, at ¶ 6 (Nov. 18, 2021) ("Reh'g Order"). The Commission found that this reporting error was contrary to Ameren Illinois's filed rate, which, prior to June 1, 2020, did not allow it to recover costs recorded to line 5 of page 227. Reh'g Order ¶ 8. For the following reasons, the Commission's decision that Ameren lacked discretion to report construction-related costs on line 8 was not unreasonable, arbitrary and capricious, or otherwise contrary to law. Accordingly, the court affirms the Orders denying review and reconsideration.

3

**I.**

Section 201 of the Federal Power Act ("FPA"), 16 U.S.C. § 824, vests the Commission with comprehensive and exclusive jurisdiction over the rates, terms, and conditions of service for the transmission and sale of wholesale electric energy in interstate commerce. *New York v. FERC*, 535 U.S. 1, 7-8 (2002); *Towns of Concord, Norwood, and Wellesley v. FERC*, 955 F.2d 67, 68 (D.C. Cir. 1992). The Commission is authorized to issue consumer refunds for rates charged in excess of the "just and reasonable rate." 16 U.S.C. § 824e(b). Public utilities are required under Section 205(c) to "file with the Commission," and keep open for public inspection, "schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission." 16 U.S.C. § 824d(c). The "filed rate doctrine" adopted by the Commission "prohibit[s] 'a regulated seller of [power] from collecting a rate other than the one filed with the Commission.'" *Towns of Concord*, 955 F.2d at 72-73 (quoting *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578 (1981)).

Section 309(h) vests the Commission with "broad remedial power" to perform "'any and all acts' 'necessary or appropriate' to carry out the FPA's statutory ends." *Verso Corp. v. FERC*, 898 F.3d 1, 11-12 (D.C. Cir. 2018) (quoting 16 U.S.C. § 825h). The Commission has "authority to order refunds if it finds violations of the filed tariff." *Consol. Edison Co. of N.Y., Inc. v. FERC*, 347 F.3d 964, 967 (D.C. Cir. 2003).

Regulated utilities are required to file rate schedule and tariff information, subject to Commission oversight. 18 C.F.R. § 35.1(a); *id.* § 141.1. Page 227 of FERC Form 1 directs a regulated utility to report annually its "[p]lant materials and operating supplies" costs incurred in its "Account 154," which

is part of the Commission's Uniform System of Accounts. *See id.* pt. 101.

In the Uniform System of Accounts, the Commission defines those records as showing "the cost of materials purchased primarily for use in the utility business for construction, operation and maintenance purposes." *Id.* Such costs are to be "functionalize[d]," or categorized as production-related, transmission-related, or distribution-related, according to the purchased materials' "primary functions." Final Rule to Revise FERC Form No. 1, 47 Fed. Reg. 1267, 1274-75 (Feb. 5, 1982) (codified at 18 C.F.R. pt. 141). This enables the Commission as well as the reporting utility to determine which materials and supplies costs can be recovered from certain customer classes. *See* FERC Form No. 1, page 227, lines 7-9. The particular method used to functionalize costs is within the utility's discretion. 47 Fed. Reg. at 1275.

Since the 1970s, electric utilities have been allowed to file annual tariffs establishing the rates to charge their customers as "formula rates." *Newman v. FERC*, 27 F.4th 690, 693 (D.C. Cir. 2022) (citing *Pub. Utils. Comm'n of Cal. v. FERC*, 254 F.3d 250, 254 (D.C. Cir. 2001)). "Rather than stating specific prices, a formula rate 'specifies the cost of components that form the basis of the rates.'" *Id.* (quoting *Pub. Utils. Comm'n of Cal.*, 254 F.3d at 254). An electric utility that has a formula rate approved by the Commission need not file new tariffs every year, *see Pub. Utils. Comm'n of Cal.*, 254 F.3d at 254, and typically files an "annual report of its categorized expenditures, which in turn act as the inputs to the approved formula that generates prices customers pay." *Newman*, 27 F.4th at 693. "A formula rate built on the Uniform System identifies by account which expenditures are passed on to ratepayers, and which fall outside the formula rate [and] so must be absorbed by the utility itself." *Id.*

Prior to June 1, 2020, petitioner Ameren Corporation subsidiaries Ameren Illinois, Ameren Transmission Company of Illinois, and Ameren Missouri were subject to formula rates that did not allow for recovery of costs recorded on line 5 of page 227 of Form 1. Ameren Illinois's formula rate included as an input materials and supplies expenditures recorded at line 8 as transmission-plant costs, but did not include materials and supplies expenditures recorded at line 5 as construction costs. *See* Refund Order ¶¶ 34, 51. The 2020 Informational Filing Ameren Illinois submitted to the Commission included cost projections and the annual revenue required to recover them in the 2020 rate year.  It did not report any costs on line 5, despite having incurred construction-related materials and supplies costs, but instead reported otherwise unrecoverable line 5 costs on line 8, thereby inflating the amounts charged to ratepayers. *See* Ameren Ill. Co., Informational Filing of Annual Formula Rate Update and True-Up attach. O at 2 (Mar. 10, 2020); Refund Order ¶¶ 34, 51.

After the Commission's decision in *Duke Energy Progress, LLC*, 163 FERC ¶ 61,051 (2018), ordering the utility to pay refunds when it failed to comply with Form 1 instructions in reporting materials and supplies costs, Ameren Illinois and other utilities proposed revisions to their formula rates to incorporate materials and supplies costs assigned to line 5.  *See Am. Ill. Co.*, Order Accepting Formula Rate Revisions, 171 FERC ¶ 61,141, at ¶¶ 1-3 (May 1, 2020). The Commission accepted Ameren Illinois's formula rate revisions effective June 1, 2020.  *See id.* ¶ 1. As of that date Ameren Illinois could recover construction-related materials and supplies costs under its filed rate.

6

## II.

Intervenor Southwestern Electric Cooperative, Inc. ("Southwestern"), an electric distribution cooperative serving rural customers in Illinois and an Ameren customer, challenged Ameren Illinois's 2020 filing. Refund Order ¶¶ 1, 34-48; Reh'g Order ¶ 5; Formal Challenge of the Southwestern Electric Cooperative, Inc. 2, 15-18 (Apr. 15, 2020). Alleging that Ameren Illinois had misreported its materials and supplies costs on Form 1, resulting in overcharges to its transmission customers over multiple years, Southwestern requested that Ameren Illinois be directed to resubmit its Form 1 filings and pay refunds for over-collections resulting from its "historical misreporting." Refund Order ¶¶ 36-37. Like the utility in *Duke Energy Progress*, Ameren Illinois had "inappropriately lump[ed] . . . two types of [materials and supplies] together" in its Form 1 filings, by including construction-related materials and supplies in its report of transmission-plant materials and supplies costs on line 8 of page 227 of Form 1, when such construction-related materials and supplies should instead have been reported at line 5 and not recovered as part of its then-effective formula rate. *Id*. ¶ 34.

The Commission found that Ameren Illinois had misreported materials and supplies costs on Form 1 and ordered Ameren Illinois to pay approximately $11.5 million in refunds to its customers, based on ten years of misreporting. *Id.* ¶¶ 49-52; Reh'g Order ¶¶ 22, 36; *see also* Ameren Ill. Co., Compliance Filing 2-3 (May 17, 2020). It denied Ameren Illinois's request for rehearing, rejecting arguments against the issuance of refunds and finding the refund directive to be consistent with *Duke Energy Progress*, the filed-rate doctrine, and principles of fairness. Reh'g Order ¶¶ 22-34.

The court reviews Commission orders under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard. *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1102 (D.C. Cir. 2019); *see* 5 U.S.C. § 706(2)(A). The "scope of review under the 'arbitrary and capricious' standard is narrow," and the Court "may not substitute [its] own judgment for that of the Commission." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The court shall, however, set aside any Commission action taken "[i]n the absence of statutory authorization." *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002).

Notably, "great deference" is accorded to the Commission in "technical area[s] like electricity rate design." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. at 292 (quoting *Morgan Stanley Cap. Grp. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 532 (2008)). And, "in rate-related matters, the court's review of the Commission's determinations is particularly deferential because such matters are either fairly technical or 'involve policy judgments that lie at the core of the regulatory mission.'" *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 54-55 (D.C. Cir. 2014) (quoting *Alcoa Inc. v. FERC*, 564 F.3d 1342, 1347 (D.C. Cir. 2009)). "[B]ecause the statutory requirement that rates be 'just and reasonable' is obviously incapable of precise judicial definition," the Commission "must have considerable latitude in developing a methodology responsive to its regulatory challenge." *Id.* (internal quotation marks and citations omitted).

Contrary to Ameren Illinois's contentions, the Commission has broad statutory authority to grant refunds. Upon finding that Ameren Illinois failed to correctly record certain materials and supplies costs in the annual Form 1 report, the Commission reasonably determined, based on a balancing of

the equities, that refunds were warranted. Ameren Illinois's arguments that the Commission abused its discretion by issuing customers a disproportionate "windfall" and unreasonably failed to perform the required balancing-of-equities test in issuing its refund order, *see* Petitioner Br. 47-55, are unpersuasive.

Essentially, Ameren Illinois contends that because reporting construction-related costs at line 8 rather than line 5 was a common industry-wide practice prior to *Duke Energy Progress*, it should not be bound by its formula rate. No justification is offered for that position. The utility's view that the misreporting was a mere technicality ignores the fact that such costs, if properly reported at line 5, could not have been passed on to customers under Ameren Illinois's formula rate. Rather than serving as a "windfall" to its customers, *see Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 817 (D.C. Cir. 1998), then, Ameren Illinois's error resulted in a windfall to itself, to the tune of $11.5 million. That is not a "ministerial error that harmed no one." Reply Br. 13.

Form 1 instructions are part of the Commission's scheme for carrying out its responsibilities under the FPA. That other utilities may have made the same Form 1 allocation error as Ameren Illinois and have not been subjected to refund orders does not demonstrate that the Commission's issuance of the refund order here was unreasonable. Nor does the Commission's clarification of Form 1 after *Duke Energy Progress* to specify that construction-related costs must be functionalized as "production," "transmission," or "distribution" costs create a prior ambiguity that relieves Ameren Illinois of its obligation to charge customers according to its filed formula rate. *See* Reh'g Order ¶¶ 23, 28. Ameren Illinois does not suggest, much less demonstrate in the administrative record, that it was unaware of the limited types

of costs that it was allowed to recover from its customers under its filed rate prior to June 1, 2020; Form 1 was unambiguous that line 5 is intended to, and does, account for estimated construction materials and operating supplies. Although historically its affiliates understood these instructions and reported accordingly, *see* Reh'g Order ¶ 29, Ameren Illinois reported such costs at line 8 instead of line 5 despite having incurred them for construction-related materials and costs. *See* Ameren Ill. Co., Informational Filing of Annual Formula Rate Update and True-Up attach. O at 2 (Mar. 10, 2020).

Ameren Illinois argued to the Commission that the refund order reflected the Commission's "fail[ure of] its basic duty to balance investor and customer interests" because the amounts in question were its "prudently-incurred Materials and Supplies costs that are recoverable in rates as a matter of policy." Request for Rehearing of Ameren Illinois Company 5 (Apr. 19, 2021). Even assuming that as a matter of policy that may be true, as a matter of law Ameren Illinois cannot deny that it was required to charge customers in accordance with its filed formula rate. *See Towns of Concord*, 955 F.2d at 72-73. That rate, prior to 2020, did not include the materials and supplies costs at issue. Consequently, the utility's failure to adhere to the Commission's system for accountability is not a minor error, especially when knowingly done for a number of years. *See* Reh'g Order ¶ 29. That Ameren Illinois *later* changed its formula rate hardly demonstrates that the Commission's refund order denying retroactive application of the revised formula rate requires reversal. In ordering refunds for charges not authorized by Ameren Illinois's then-current rate, the Commission reasonably "[b]alanc[ed] the equities and the competing interests of [Ameren Illinois] and its customers." Respondent's Br. 15, 40-42; *see* Refund Order ¶¶ 49-52; Reh'g Order ¶ 31.

The touchstone for a public utility's rate schedule — and for the Commission's rules and regulations — is the requirement that rates, rules, and regulations be "just and reasonable." 16 U.S.C. § 824d(a). Although the Commission "may not retroactively alter a filed rate to compensate for prior over- or underpayments," *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1211 (D.C. Cir. 2009), that is not what occurred here. All the Commission has done is require Ameren Illinois to correct a reporting error that resulted in overcharging customers for expenses not allowed under Ameren Illinois's then-registered formula rate. Its contrary arguments fail to demonstrate that the refund order was unjust or contrary to law.

Accordingly, the court denies the petitions for review and affirms the challenged orders.