# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 23-1075**

**September Term, 2023**

FILED ON: JULY 5, 2024

BROOKFIELD WHITE PINE HYDRO LLC,
            PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
            RESPONDENT

AMERICAN WHITEWATER, ET AL.,
            INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

Before: MILLETT, KATSAS and CHILDS, *Circuit Judges*.

## J U D G M E N T

This petition for review was considered on the record from the Federal Energy Regulatory Commission and on the parties' briefs and oral arguments. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the petition for review be **DENIED**.

Brookfield White Pine Hydro LLC ("Brookfield") seeks to renew its license to operate a hydroelectric dam in Maine. It petitions for review of a Federal Energy Regulatory Commission ("FERC") order in which FERC refused to hold that the state had waived its ability to participate in the licensing process because it failed to comply with certain procedural requirements by the statutory deadline to do so. Because, on this unusual record, we find that the statutory deadline ceased to apply to Brookfield's submission, we will deny Brookfield's petition for review.

1

**I.**

**A.**

Under the Federal Power Act, FERC has authority to license the operation of hydroelectric dams. 16 U.S.C. §§ 792, 817(1); *see also S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 373 (2006). But before FERC grants a license, the Clean Water Act gives states the opportunity to certify or deny certification for the project, if it will not comply with state water quality standards, and to impose operating conditions. 33 U.S.C. § 1341(a)(1), (d); *see also Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 971 (D.C. Cir. 2011). Any conditions the state imposes become a mandatory part of the federal license. *Alcoa Power*, 643 F.3d at 971.

However, if the state does not "act on" an application, by granting or denying it, within one year of receiving the application, the state's certification authority "shall be waived with respect to [that application]." 33 U.S.C. § 1341(a)(1). Section 401's time limit guards against "dalliance or unreasonable delay" by the states, which might otherwise use the certification requirement to delay the issuance of certain licenses indefinitely. *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1104-05 (D.C. Cir. 2019) (quoting 115 Cong. Rec. 9264 (1969)).

Under regulations promulgated by the Environmental Protection Agency (the "EPA"), as of September 11, 2020, a state's denial of certification will only meet the statutory requirement to "act on" the application if it contains certain required information including 1) the "specific water quality requirements" with which the project "will not comply," 2) an explanation of "why," and 3) if the denial is "due to insufficient information," a description of "the specific water quality data or information, if any," needed to determine compliance. Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210, 42,286 (July 13, 2020) ("2020 Rule") (codified at 40 C.F.R. § 121.7(e)(1) (2020)). [1] If the denial fails to include these requirements, the regulation deems the state's certification authority "waived." 40 C.F.R. § 121.9(a)(2)(iii) (2020).

**B.**

Petitioner Brookfield seeks a license to continue operating the Shawmut Hydroelectric Project on the Kennebec River in Maine, following the expiration of its previous 40-year license. In January 2020, Brookfield filed its license application with FERC and shortly thereafter, on August 28, 2020, filed a Section 401 certification application with Maine. Maine provided Brookfield with a draft order denying water quality certification on August 11, 2021, largely based on concerns that Brookfield's project would not meet state water quality requirements regarding safe fish passage, including for Atlantic salmon. Brookfield withdrew its initial license application one week later.

Brookfield tried again on October 15, 2021. It filed its second certification request with "important updates [to its] proposal, including the preliminary Section 18 fishway prescriptions, fish passage measures from [its] Species Protection Plans, and additional measures from the Draft Environmental Assessment recommended by FERC staff," purporting to address the concerns

---

[1] On September 27, 2023, the EPA promulgated a new rule, which became effective on November 27, 2023, and replaced portions of the 2020 Rule. *See* Clean Water Act Section 401 Water Quality Certification Improvement Rule, 88 Fed. Reg. 66,558 (Sept. 27, 2023).

2

about Atlantic salmon passage raised in Maine's prior denial. J.A. 178-182. Then, on September 22, 2022, less than one month before the deadline for Maine to act on Brookfield's application, Brookfield filed significant modifications to its application, "including new information related to its proposed fish passage measures and additional proposed measures that it had not filed with [Maine] previously." J.A. 291 n.2, 294; *see* J.A. 279-81. The September amendments included "a suite of measures that would reduce entrainment, provide safe downstream passage routes, and improve passage survival conditions for spill" for salmon, as well as new "mitigation measures." J.A. 280.

Three weeks later, on October 12, Maine issued a final denial without prejudice on the ground that it lacked sufficient information to determine whether Brookfield's application would comply with relevant state environmental regulations. *Brookfield White Pine Hydro, LLC*, Denial Without Prejudice, Me. Dep't of Env't Prot., Project No. L-019751-33-I-N (filed Oct. 12, 2022) ("Maine Denial"). Maine pointed to several categories of information that it needed to properly evaluate compliance, including: a Biological Opinion being developed by the National Marine Fisheries Service analyzing the proposed project's impacts on Atlantic Salmon, information and analysis relating to downstream passage studies that Brookfield had provided to the Service but not to Maine, a supplemental Environmental Impact Statement being prepared by FERC, and information regarding any additional changes to Brookfield's proposal that may be required in response to its collaborations with those federal agencies. *Id.* Maine added that it did not have time to adequately evaluate Brookfield's proposal because the proposal had been supplemented by a "late-stage filing" which "contain[ed] additional fish passage measures that [Brookfield] assert[ed] [were] significant enough to warrant [Maine's] approval." *Id.* at 2 n.2.

Following Maine's denial, Brookfield sought a determination from FERC that the denial constituted a waiver of Maine's certification authority because it failed to comply with the regulatory requirements outlined in 40 C.F.R § 121.7(e)(1), including the identification of which state water quality requirements the proposed dam would violate and an explanation of why it would fail to comply. *Brookfield White Pine Hydro LLC*, Request for Determination on Denial of Water Quality Certification for the Shawmut Hydroelectric Project, Project No. 2322-069 (filed Nov. 7, 2022). According to Brookfield, those omissions resulted in a waiver. *Id.*

FERC disagreed. *Brookfield White Pine Hydro LLC*, Notice of Denial of Water Quality Certification, Project No. 2322-069 (issued Nov. 22, 2022); *Brookfield White Pine Hydro LLC*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Project No. 2322-073, 182 FERC ¶ 62,025 (issued Jan. 17, 2023); *Brookfield White Pine Hydro LLC*, Order Addressing Arguments Raised on Rehearing, Project No. 2322-073, 182 FERC ¶ 61,169 (issued Mar. 17, 2023) ("Rehearing Order"). FERC concluded that fulfilling Section 121.7(e)(1)(iii) (a description of "the specific water quality data or information, if any," needed to determine compliance) alone was sufficient, as the two other elements would be impossible to complete if the denial applied to the third element. Rehearing Order at PP 16-18. If the state required additional information to determine compliance, FERC reasoned, then it could not yet identify which state requirements the project would violate. *Id.* FERC also recognized that Maine's argument that it could not adequately evaluate Brookfield's proposal was "supported by the fact that on September 21, 2022, [Brookfield] filed . . . supplemental information on its relicensing application, including a proposal to add measures to minimize or mitigate the effects

3

of delayed mortality and improve the downstream survival of juvenile and adult Atlantic salmon at the project." *Id.* at PP 17-18 & n.41.

Brookfield filed this petition for review of FERC's orders, seeking a decision that Maine's failure to include the first two regulatory requirements constituted a waiver of the state's certification authority.

**II.**

We need not decide whether Maine "act[ed] on" Brookfield's October 15 application, however. On this unusual record—where, just weeks before Maine was due to act on Brookfield's October 2021 application, Brookfield made updates it concedes materially affected its ability to meet exactly those water quality standards that were the basis for Maine's previous draft denial— we conclude that Brookfield's September 2022 amendments displaced Maine's statutory obligation to "act on" the obsolete October 2021 provisions. [2]

In promulgating the very rule on which Brookfield now relies, the EPA expressed its belief that, "if certain elements of the proposed project materially change from what was originally proposed or from what is described or analyzed in additional information submitted by the project proponent, it is the EPA's interpretation that the certifying authority no longer has an obligation to act on that request." Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210, 42,246-42,247 (July 13, 2020); *see id.* ("[I]f certain elements of the proposed project (e.g., the location of the project or the nature of any potential discharge that may result) change materially after a project proponent submits a certification request, it may be reasonable for the project proponent to submit a new certification request."). This approach fairly balances the provision's dual goals "to prevent States from delaying federal projects by taking no action on certification requests," and "to assure that Federal licensing or permitting agencies cannot override State water quality requirements." *N.C. Dep't of Envtl. Quality v. FERC*, 3 F.4th 655, 670 (4th Cir. 2021) (citation omitted) (emphasis omitted). And our cases have recognized that the one-year clock will not apply to requests that are sufficiently different from the initial submission that started the clock ticking. *See Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1104 (D.C. Cir. 2019) ("We . . . need not determine how different a request must be to constitute a 'new request' such that it restarts the one-year clock.").

Here, Brookfield's last-minute submission was undoubtedly material. As Maine described it, the "late-stage submission," "reflect[ed] new information and changes to [Brookfield's] evolving [certification] application, including purported changes to proposed fish passage measures." Maine Denial at 5. Indeed, Brookfield's counsel repeatedly conceded at oral argument that the changes were material. *See* Oral Arg. 8:55 ("So it wasn't an immaterial change?" A: "We're not disputing the materiality of this late-stage submission."); *id.* 14:20 (The updated plan "is a material change, and slightly more protective for Atlantic Salmon.").

---

[2] The EPA's regulation and the Clean Water Act requirements raise purely legal questions committed to EPA, not FERC, and are questions we decide *de novo* in this case. Since resolution of those questions "'does not depend upon a factual determination or a policy judgment that the agency alone is authorized to make,'" there is no barrier to our reaching the relevance of Brookfield's late filing. *Sierra Club v. FERC*, 827 F.3d 36, 48 (D.C. Cir. 2016) (quoting *Shea v. Off. of Workers' Comp.*, 929 F.2d 736, 739 n.4 (D.C. Cir. 1991)).

Moreover, Maine's denial relied in part on the belated timing of Brookfield's material changes to its application. Maine explained that it did not have time to adequately review Brookfield's new submission before the October 18 deadline. And Maine had no obligation to act on Brookfield's new application in that artificially compressed time frame.

We reject Brookfield's suggestion that Maine could have complied with regulatory requirements by denying its application as submitted in October 2021 without consideration of the September 2022 amendments. *See* Oral Arg. 13:00-14:30. To start, Brookfield did not make this argument that, under the regulatory scheme, Maine nonetheless had an obligation to act upon an application that was now moot in material and highly relevant parts. So that argument is forfeited. In any event, we see no basis in either the statute or the regulation to require Maine to expend its limited resources reviewing elements of an application that has since been materially altered to address concerns raised by the State and so is no longer the actual proposal being advanced by the applicant to FERC.

Because Brookfield's last-minute material changes to the application relieved Maine of its obligation to act on the old version of the application, FERC did not err in concluding that Maine did not waive its certification authority by deferring action on the application. [3]

For the foregoing reasons, Brookfield's petition for review is denied.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Michael C. McGrail
Deputy Clerk

---

[3] Because Maine was no longer required to act on the October 15 application, and any subsequent versions of the application are not before us, we need not decide here the precise form that the 2020 rule requires a certification denial to take. We also need not resolve whether the September 2022 update, read in tandem with the October 2021 submission, properly constituted a new application that Maine was obliged to act upon, or the effect, if any, of FERC's failure to provide notice of the date by which Maine should have acted on the revised application or whether Maine was obliged to act by a specific date. *See* 2020 Rule, 40 C.F.R. § 121.6(b)(3) (2020) ("[T]he Federal agency shall provide, in writing . . . [t]he date upon which waiver will occur if the certifying authority fails or refuses to act on the certification request.").