# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 11, 2022         Decided June 17, 2022

No. 21-1120

TURLOCK IRRIGATION DISTRICT AND MODESTO IRRIGATION
DISTRICT,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENTS

AMERICAN WHITEWATER, ET AL.,
INTERVENORS

---

Consolidated with 20-1121

---

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

---

*Misha Tseytlin* argued the cause for petitioners. With him
on the briefs were *Charles R. Sensiba*, *Morgan M. Gerard*, and
*Kevin M. LeRoy*.

*Michael A. Swiger* was on the brief for Hydropower *amici
curiae* in support of petitioners.

*Jared B. Fish*, Attorney, Federal Energy Regulatory

Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Eric M. Katz*, Supervising Deputy Attorney General, Office of the Attorney General for the State of California, argued the cause for intervenor California State Water Resource Control Board in support of respondent. With him on the brief were *Rob Bonta*, Attorney General, *Robert W. Byrne*, Senior Assistant Attorney General, and *Jennifer Kalnins Temple* and *Adam L. Levitan*, Deputy Attorneys General.

*Julie Gantenbein*, *Lena H. Hughes*, *Joseph Palmore*, and *Andrew McAleer Hawley* were on the brief for Intervenors Tuolumne River Trust, et al. in support of respondent.

*Robert W. Ferguson*, Attorney General, Office of the Attorney General for the State of Washington, *Kelly T. Wood* and *Gabrielle Gurian*, Assistant Attorneys General, *Philip J. Weiser*, Attorney General, Office of the Attorney General for the State of Colorado, *Carrie Noteboom*, First Assistant Attorney General, *William Tong*, Attorney General, Office of the Attorney General for the State of Connecticut, *Jill Lacedonia*, Assistant Attorney General, *Karl A. Racine*, Attorney General, Office of the Attorney General for the District of Columbia, *Caroline Van Zile*, Acting Solicitor General, *Kwame Raoul*, Attorney General, Office of the Attorney General for the State of Illinois, *Aaron M. Frey*, Attorney General, Office of the Attorney General for the State of Maine, *Brian Frosh*, Attorney General, Office of the Attorney General for the State of Maryland, *Adam D. Snyder*, Assistant Attorney General, *Keith Ellison*, Attorney General, Office of the Attorney General for the State of Minnesota, *Peter N. Surdo*, Special Assistant Attorney General, *Matthew J. Platkin*, Acting Attorney General, Office of the Attorney General for the State of New Jersey, *Lisa*

*J. Morelli*, Deputy Attorney General, *Hector Balderas*, Attorney General, Office of the Attorney General for the State of New Mexico, *William Grantham*, Assistant Attorney General, *Letitia James*, Attorney General, Office of the Attorney General for the State of New York, *Barbara D. Underwood*, Solicitor General, *Brian Lusignan*, Assistant Attorney General, *Joshua S. Stein*, Attorney General, Office of the Attorney General for the State of North Carolina, *Asher P. Spiller*, Assistant Attorney General, *Ellen F. Rosenblum*, Attorney General, Office of the Attorney General for the State of Oregon, *Paul Garrahan*, Attorney-in-Charge, *Thomas J. Donovan, Jr.*, Attorney General, Office of the Attorney General for the State of Vermont, *Laura B. Murphy*, Assistant Attorney General, *Maura Healey*, Attorney General, Office of the Attorney General for the State of Massachusetts, *Matthew Ireland*, Assistant Attorney General, *Turner H. Smith*, Assistant Attorney General and Deputy Chief, *Josh Shapiro*, Attorney General, Office of the Attorney General for the Commonwealth of Pennsylvania, *Aimee D. Thomson*, Deputy Attorney General, *Jason Miyares*, Attorney General, Office of the Attorney General for the Commonwealth of Virginia, were on the brief for *amici curiae* States of Washington, et al. in support of respondents.

Before: WILKINS and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: An applicant for a federal license to operate a hydroelectric facility must seek a State certification that the facility's discharges will comply with the water quality standards specified in federal law. 33 U.S.C. § 1341(a)(1). The State may grant the applicant's request outright, or it may grant the request subject to conditions

relating to water quality, or it may deny the request, or it may fail to act. If the State agency denies certification, no federal license, or at least no federal long-term license, may issue. *See id.* § 1341(d).

This case presents questions about the directive in section 401 of the Clean Water Act that if "the State . . . fails or refuses to act on a request for certification" within one year from receiving the request, the State "shall" be deemed to have waived its authority to grant or deny water quality certification. *Id.* § 1341(a)(1).

The Federal Energy Regulatory Commission decides whether to license private, municipal and State hydroelectric projects subject to federal jurisdiction. *See* 16 U.S.C. §§ 797(e), 817(1).[1] This case arose from a combined licensing and re-licensing proceeding for two hydroelectric facilities in California. The administrative record is as follows.

Both of the hydroelectric facilities – the Don Pedro Project and the La Grange Project – are on the Tuolumne River in central California. The Turlock and Modesto Irrigation Districts own the facilities. FERC's predecessor agency granted a fifty-year license to operate the Don Pedro Project. The license expired in 2016. The other, quite smaller project – La Grange – has operated since the 1890's but in 2012 FERC decided that La Grange was subject to federal licensing authority. We

---

[1] FERC has licensing authority over only non-federal hydroelectric projects. Federally-owned hydroelectric projects, which generate about half of all hydroelectric power in the United States, "are managed primarily by the U.S. Department of the Interior's Bureau of Reclamation [] and the U.S. Army Corps of Engineers . . .." KELSI BRACMORT ET AL., CONG. RSCH. SERV., R42579, HYDROPOWER: FEDERAL AND NONFEDERAL INVESTMENT 2, 6 (2015).

upheld FERC's decision in *Turlock Irrigation District v. FERC*, 786 F.3d 18 (D.C. Cir. 2015).

In 2017, the Districts filed with FERC a new license application for the La Grange Project and an amended relicensing application for the Don Pedro Project.

On January 26, 2018, the Districts filed certification requests for both projects with the California State Water Resources Control Board. On January 24, 2019 – 363 days later – the California Board denied the requests "without prejudice." The California Board gave two reasons. The first: "FERC has not yet completed its National Environmental Policy Act (NEPA) environmental analysis for the Projects." J.A. 820. The second: "the Districts, as lead agencies for the Projects, have not begun the CEQA [California Environmental Quality Act] process. Without completion of the CEQA process, the State Water Board cannot issue a certification." *Id.* The Board added that its denial was not a "judgment on the technical merits." *Id.*

On April 22, 2019, the Districts sent the Board "substantively unchanged" certification requests for the Projects. *Turlock Irrigation Dist. & Modesto Irrigation Dist.*, 174 FERC ¶ 61,042, at P. 8 (2021) ("*Declaratory Order*"). On April 20, 2020 – 364 days later – the Board again denied the requests "without prejudice." The Board gave the same explanation as it had before.[2]

---

[2] The California Board's full reasoning was the following:

The Districts are the lead agencies for the Project for purposes of CEQA compliance, but they have not begun the CEQA process. As a responsible agency, the State Water Board relies on the environmental document prepared by the lead agency, but makes its

The Districts sent a third certification request for both projects to the California Board in July 2020. In October of that year, while these requests were pending, the Districts filed a petition with FERC seeking a declaratory order that the California Board had waived section 401(a)(1)'s State certification requirement. One month later, the Districts informed the California Board that they were withdrawing their certification applications. Despite the Districts' withdrawal of these requests, in January 2021 the California Board granted certification for both Projects.[3] Although the Districts had still not completed the CEQA process for the Projects, California law had changed to allow the California Board to grant certification prior to the completion of that process. *Declaratory Order*, at P. 11 & n.25; *see* Cal. Water Code § 13160(b)(2) (2020).

The Districts object to the conditions – some forty-five – that the California Board imposed in granting their requests for

---

own determination as to whether and with what conditions to grant the certification, taking into consideration the information provided in the lead agency's document. (Pub. Resources Code, §§ 21080.1, subd. (a), 21002.1, subd. (d).) The State Water Board may not issue a certification until the requirements for compliance with CEQA are met. Additionally, the Federal Energy Regulatory Commission has not yet completed its National Environmental Policy Act environmental process for the Project.

J.A. 1159.

[3] The Districts are challenging the Board's action in California State court. *See* Petitioners Br. iii; California Board Intervenor Br. 19; *Turlock Irrigation Dist. v. State Water Res. Control Bd.*, No. CV63819 (Cal. Super. Ct., Tuolumne County, filed May 11, 2021).

certification. If the California Board did not waive its certification authority under section 401(a)(1), those conditions would be mandatory. *See* 33 U.S.C. § 1341(d). On the other hand, if the California Board had waived its section 401(a)(1) authority, the conditions would become only "recommendations" for FERC to consider in developing the terms and conditions of the Districts' federal licenses under Federal Power Act § 10(a), 16 U.S.C. § 803(a). FED. ENERGY REGUL. COMM'N, OFF. OF ENERGY PROJECTS, DIV. OF HYDROPOWER LICENSING, PREPARING ENVIRONMENTAL DOCUMENTS: GUIDELINES FOR APPLICANTS, CONTRACTORS, AND STAFF 10 (2008).

FERC denied the Districts' petition for a declaratory order. *Declaratory Order*, at PP. 1, 20–35. The Districts petitioned for rehearing which FERC denied. *Turlock Irrigation Dist. & Modesto Irrigation Dist.*, 175 FERC ¶ 61,144, at PP. 11–21 (2021) (*"Rehearing Order"*).[4] FERC reasoned that the California Board, "by denying the applications without prejudice, indeed acted on [] them . . .." *Declaratory Order*, at P. 28. FERC relied on section 401's "plain language," which requires that a State "act" on a certification request within one year. *Id.* at P. 33; *Rehearing Order*, at P. 11. FERC distinguished the California Board's denials without prejudice from *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019), which FERC said involved "a coordinated withdrawal and resubmittal scheme" that allowed the State agencies to not act and still avoid waiver. *Rehearing Order*, at PP. 16. Because section 401 requires only action within a year to avoid waiver, FERC also rejected the Districts' argument that the California Board's denials were "invalid" as a matter of federal law because they were "on non-substantive grounds" and not "on the

---

[4] Commissioner James P. Danly dissented from the denial of rehearing.

technical merits of the certification requests." *Declaratory Order*, at PP. 30–32; *see Rehearing Order*, at P. 11.

We agree with FERC that the California Board did not waive its certification authority under section 401(a)(1) and that FERC's ruling is not contrary to *Hoopa Valley*. The Fourth Circuit accurately described *Hoopa Valley* as a case in which "the state agencies and the license applicant entered into a written agreement that obligated the state agencies, year after year, to *take no action at all* on the applicant's § 401 certification request." *N.C. Dep't of Env't Quality v. FERC*, 3 F.4th 655, 669 (4th Cir. 2021).

Those circumstances are not present in this case. Each time the California Board denied certification, the Board "act[ed]" within the meaning of section 401(a)(1). *See N.Y. State Dep't of Env't Conservation v. FERC*, 884 F.3d 450, 456 (2d Cir. 2018); *N.Y. State Dep't of Env't Conservation v. FERC*, 991 F.3d 439, 450 n.11 (2d Cir. 2021). And when the Board granted the third application subject to conditions, it "act[ed]" once more. Contrast this with *Hoopa Valley*. The action contemplated in section 401(a)(1) is action by the State agency. Yet the response of the State agencies to the certification requests in *Hoopa Valley* was not action, but inaction.[5] By

---

[5] That was also the situation in *Placer County Water Agency*, 167 FERC ¶ 61,056 (2019), *on reh'g*, 169 FERC ¶ 61,046 (2019), as FERC pointed out in its *Declaratory Order*, at P. 24, and in its *Rehearing Order*, at P. 18, in this case. In *Placer County*, e-mails showed that the state agency "elicit[ed] a withdrawal and resubmission" of the certification application shortly before the one-year deadline. *Declaratory Order*, at P. 24.

And "inaction" also described how FERC dealt with a different deadline in a different statute. *See Allegheny Def. Project v. FERC*, 964 F.3d 1, 13 (D.C. Cir. 2020) (en banc). There, FERC granted

agreement, the applicant filed and then withdrew its certification request before the one-year period expired, a ritual repeated for more than ten years. *Hoopa Valley*, 913 F.3d at 1101–02, 1104.[6] There was no such agreement between the Districts and the California Board. The court's opinion in *Hoopa Valley* stressed that the applicant's "water quality certification request has been complete and ready for review for more than a decade." *Id.* at 1105. Here, the Districts' requests were not complete and they were not ready for review, which is why the California Board denied them. The Board's denials were "without prejudice,"[7]

---

rehearing solely "for the purpose of affording additional time to consider the merits of a rehearing request." *Rehearing Order*, at P. 11. The denials in this case occurred for a different reason, namely that the California Board lacked information that it needed to grant certification. This included the completion of the CEQA process, which the Districts had not even begun.

[6] The evidence in *Hoopa Valley* tended to show that the applicant did not want an immediate license that would have required decommissioning some of the project's dams in line with current federal environmental standards. *See PacifiCorp*, 147 FERC ¶ 61,216, at PP. 3–5, 11 n.11, 17 (2014). The applicant may have been using this delay tactic in the hope of obtaining federal funding before being required to decommission the dams. *See id.* at PP. 5, 12–13 & n.13. And the applicant had an incentive to delay: while awaiting relicensing, FERC must issue annual licenses that allow for the continued operation of hydroelectric projects under the terms of the existing, expired license. *See* 16 U.S.C. § 808(a)(1). The applicant's expired license was issued in 1954 and presumably included far fewer environmental conditions than are required under current federal law. *PacifiCorp*, at P. 11 & n.11.

[7] In context, the words "without prejudice" signified that the Districts could apply again, and that the Board's decision did not have preclusive effect. This would have been evident from the Board's reasoning even without the quoted words, which is doubtless why the

but those rulings still had the legal effect under section 401 of precluding FERC from issuing licenses to the Districts during the period preceding the Board's grant of the certifications. *See* 33 U.S.C. § 1341(d).

The Districts' answer to these points is that if we uphold FERC's ruling, State agencies could extend the time for decision indefinitely by denying one certification request after another without prejudice, thus nullifying section 401's one-year limit. The Districts' argument takes the familiar form of the slippery slope. But as with any slippery slope argument, its power to persuade is a function of the plausibility of its predictions.

In response to the Districts' argument in the administrative proceedings FERC stated: "It may be that the courts will find repeated denials without prejudice, particularly those that do not rest on any substantive conclusions, to be the equivalent of the withdrawal-and-resubmittal scheme." *Declaratory Order*, at P. 33.[8] FERC continued: "Given, however, that the state in this case appears to have satisfied the statutory mandate for action, we are not prepared to conclude based on the record before us that the state has waived its section 401 authority." *Id.*

It is also important to recognize that slippery slope arguments often can be turned against themselves. Potentially, for each slippery slope there is an opposing slope. "As in all arguments from consequences, drawing attention to the

Districts' counsel stated at oral argument that "nothing" in their case depended on "the words without prejudice." Oral Arg. 7:22–23.

[8] Whether the Districts' hypothetical is plausible may depend on whether the State agency, in issuing denials, is complying with State law, which in turn may depend on the State agency's reasons for denying the applications.

[supposed] bad outcomes of one course of action is not enough; one has to show that the alternative courses of action don't have just as bad (or even worse) consequences themselves." David Enoch, *Once You Start Using Slippery Slope Arguments, You're on a Very Slippery Slope*, 21 OXFORD J. LEGAL STUD. 629, 636 (2001).

Counsel for FERC put the opposing slope this way. What the Districts propose could lead to "gamesmanship." Respondent Br. 35. Applicants could file certification requests lacking sufficient documentation. "That would leave the State in an untenable position." *Id.* Given the Districts' contention "that a within-one-year denial must be 'on the merits' to avoid waiver . . . the State would be stuck with the Hobson's choice of either granting certification [without necessary information] or waiving its power to" decide. *Id.*

In deciding not to adopt the Districts' proposed interpretation of section 401(a)(1) FERC thus made what can only be regarded as a quite rational judgment. The Districts' remaining arguments do not merit discussion and have been denied for the reasons given by FERC.

*The petitions for judicial review are denied.*