# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-1342**

**September Term, 2024**

FILED ON: JULY 10, 2025

NEVADA IRRIGATION DISTRICT,
          PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
          RESPONDENT

CALIFORNIA STATE WATER RESOURCES CONTROL BOARD, ET AL.,
          INTERVENORS

Consolidated with 24-1080, 24-1159

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

Before: SRINIVASAN, *Chief Judge*, KATSAS and GARCIA, *Circuit Judges*.

### J U D G M E N T

These petitions for review were considered on the record from the Federal Energy Regulatory Commission and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the petitions for review be **DENIED.**

*       *       *

The Nevada Irrigation District holds licenses to operate two hydroelectric projects in California. It applied with the Federal Energy Regulatory Commission to renew those licenses. As part of the relicensing process, the District asked the California State Water Resources Control Board to certify that the projects will comply with state water-quality standards. Ordinarily, FERC may not issue a license until an applicant obtains such certification. But the District claims that the Board waived this certification requirement by engaging in a coordinated scheme to delay the certification process. FERC disagreed, finding insufficient evidence of coordination. We recently

1

sustained a similar determination by FERC in *Village of Morrisville v. FERC*, 136 F.4th 1117 (2025). Consistent with that decision, we deny the District's petitions for review.

## I

## A

Our *Morrisville* decision describes the relevant statutory scheme in detail. *See id.* at 1121–22. In brief: The Federal Power Act makes it unlawful to build or operate a hydroelectric facility in U.S. navigable waters without a license from FERC. 16 U.S.C. § 817(1). These licenses run for at least thirty years and can last up to fifty. *Id.* § 808(e). Once a license expires, the federal government may "take over" the project or "issue a new license." *Id.* § 808(a)(1). Until it does either, FERC must issue "from year to year an annual license" to the current licensee "under the terms and conditions of the existing license." *Id.*

States play a key role in this licensing scheme through Section 401 of the Clean Water Act. *See* 33 U.S.C. § 1341. To receive a federal license for activities that "may result in any discharge into the navigable waters," an applicant must first procure a "certification from the State in which the discharge originates" that the project will comply with state water-quality standards. *Id.* § 1341(a)(1). No license may be granted without state certification. *Id.*

A state, however, can waive that certification authority. A state "waive[s]" Section 401's certification requirements if it "fails or refuses to act" on a certification request "within a reasonable period of time," not to exceed "one year." *Id.* In imposing this one-year deadline, "Congress plainly intended to limit the amount of time that a State could delay a federal licensing proceeding without making a decision on the certification request." *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 972 (D.C. Cir. 2011).

## B

The District's petitions require us to decide whether California waived Section 401's requirements as to two interconnected hydroelectric projects in the state.

*Yuba-Bear.* One proceeding concerns the Yuba-Bear Hydroelectric Project, which comprises several dams, reservoirs, and connected facilities that sit near the eastern edge of Northern California. In 1963, the Nevada Irrigation District received a license to run the project until 2013.

In 2011, the District set the relicensing process in motion. It filed a new licensing application with FERC and requested water-quality certification from the California State Water Resources Control Board. The certification process included review under the California Environmental Quality Act (CEQA), which required the District to prepare and submit certain informational materials. *See Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920, 925 (9th Cir. 2022). The Board notified the District that "CEQA requirements must be satisfied before the State Water Board can issue certification." J.A. 17.

The District never completed those requirements. *See Cal. Water Bd.*, 43 F.4th at 927. So, as the Board's one-year deadline to act neared, the District withdrew and resubmitted its certification request. The Board responded with a letter acknowledging the withdrawal and re-filing, reminding the District of its CEQA responsibilities, and resetting the deadline for certification.

2

This pattern continued for the next few years. The District would fail to complete the CEQA review process, leading it to withdraw and refile its certification request. And with each resubmission, the Board would respond by reiterating the CEQA requirements and resetting the deadline for certification.

Eventually, in 2019, the Board denied the District's latest request for certification without prejudice, explaining that it could not issue a certification absent completion of the CEQA process. The District then petitioned FERC for an order declaring that the Board had waived its certification authority.

FERC granted the petition. It concluded that the Board had waived its certification authority by "coordinat[ing]" a withdraw-and-refile scheme with the District. *Nev. Irrigation Dist.*, 171 FERC ¶ 61,029, at PP 20–29 (Apr. 16, 2020).

The Board petitioned for review in the Ninth Circuit, which held that FERC's coordination finding was unsupported by substantial evidence. *Cal. Water Bd.*, 43 F.4th at 932. The Ninth Circuit then vacated FERC's order and remanded for further proceedings. *Id.* at 936.

On remand, the District filed a "supplemental petition" for relief, raising new arguments and submitting new evidence on the waiver issue. J.A. 404. FERC denied the petition and the District's request for rehearing. *Pac. Gas & Elec. Co.*, 186 FERC ¶ 61,121, at P 37 (Feb. 15, 2024) (February 2024 Order); *Nev. Irrigation Dist.*, 187 FERC ¶ 61,095, at P 2 (May 23, 2024) (May 2024 Order). The District now petitions for review of FERC's orders in this court instead of in the Ninth Circuit.

*Drum-Spaulding.* The other proceeding before us concerns the Drum-Spaulding Hydroelectric Project, also located in Northern California. In 1963, the Pacific Gas & Electric Company (PG&E) received a license to run the Drum-Spaulding project until 2013. As the expiration date neared, PG&E filed a new licensing application with FERC and requested water-quality certification from the Board.

Things played out in roughly the same way as they did in the Yuba-Bear matter. Each year, PG&E withdrew and refiled its certification request. And the Board responded each time by reminding PG&E of its CEQA responsibilities and resetting the deadline for certification. Then, in 2018, the Board denied PG&E's certification request without prejudice, explaining that PG&E had yet to provide certain CEQA materials. PG&E followed up by submitting another certification request. Within a year, the Board denied that request without prejudice too, again citing the outstanding CEQA requirements.

In 2021, PG&E petitioned FERC for an order declaring that the Board had waived its certification authority as to the Drum-Spaulding project. FERC denied the request, finding that the Board had not "engaged in a coordinated withdrawal-and-resubmittal scheme with PG&E to circumvent the one-year deadline." *Pac. Gas & Elec. Co.*, 184 FERC ¶ 61,138, at P 20 (Sep. 5, 2023) (Drum-Spaulding Declaratory Order).

While all of this was underway, PG&E and the District were in talks to split the Drum-Spaulding Project into three developments and to transfer one development to the District. After FERC approved the transfer, it substituted the District for PG&E as the applicant on PG&E's petition for declaratory relief.

3

In 2023, the District (now the applicant on the waiver request) sought rehearing on FERC's order denying declaratory relief. FERC denied that request. *See* February 2024 Order, 186 FERC ¶ 61,121, at P 3. The District now petitions for review of FERC's orders from this proceeding too.

Because both proceedings raise substantially similar issues, we consolidated the District's petitions for review.

## II

The District raises several challenges to FERC's orders. It argues that (A) FERC's no-waiver findings are unsupported by substantial evidence and (B) federal law preempts the Board's effort to incorporate CEQA review as part of its certification process. Some of FERC's specific arguments apply to both the Yuba-Bear and the Drum-Spaulding proceedings; others are unique to each proceeding. We review FERC's orders for "arbitrary and capricious" reasoning, *Bangor Hydro-Elec. Co. v. FERC*, 78 F.3d 659, 663 & n.3 (D.C. Cir. 1996), and treat FERC's factual findings as "conclusive" if supported by "substantial evidence," 16 U.S.C. § 825*l*(b). Under those standards, we sustain FERC's orders against the District's challenges.

## A

In both proceedings, FERC determined that a state waives its certification authority if it engages in a "coordinated" withdraw-and-refile scheme to avoid Section 401's one-year deadline. *See* February 2024 Order, 186 FERC ¶ 61,121, at PP 26, 38. Applying that standard, FERC concluded that the California Board did not waive its certification authority. The District accepts FERC's coordination standard. It argues only that FERC's application of that standard is unsupported by substantial evidence. *See* Reply Brief 27–28. We disagree.

## 1

FERC reasonably concluded that the Board did not coordinate a withdraw-and-refile scheme in the Yuba-Bear proceeding. The Ninth Circuit had already determined that the evidence initially before FERC did not establish "coordination." *Cal. Water Bd.*, 43 F.4th at 932–33. FERC was bound by that decision on remand. *See City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346 (D.C. Cir. 1977). Indeed, the District agrees that the initial record "was not sufficient to demonstrate coordination." Reply Brief 19.

The District argues only that FERC should have reopened the record on remand and accepted additional evidence, comprising several emails from a Board employee and an affidavit from a District consultant. We review FERC's decision not to reopen the record only for "the clearest abuse of discretion." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987) (cleaned up); *see also* 18 C.F.R. § 385.716(a), (c).

No such abuse occurred here. FERC noted that the District could have provided this evidence much earlier. *See* February 2024 Order, 186 FERC ¶ 61,121, at PP 16, 39, 41; May 2024 Order, 187 FERC ¶ 61,095, at PP 11–12. The District counters that it had tried to submit the affidavit sooner but was denied on timeliness grounds under FERC's rules. It also adds that the emails had been misfiled internally. But these unforced errors did not create the sort of

"extraordinary circumstances" requiring FERC to reopen the record. *SFPP, L.P. v. FERC*, 967 F.3d 788, 797 (D.C. Cir. 2020) (per curiam) (cleaned up).[1]

**2**

FERC also reasonably found no coordination in the Drum-Spaulding matter. *See* Drum-Spaulding Declaratory Order, 184 FERC ¶ 61,138, at P 22. The initial petition for relief included only two kinds of evidence: (1) the letters from PG&E withdrawing and refiling its certification requests and (2) the letters from the Board confirming receipt. *Id.* None of PG&E's letters suggest that the Board ever directed, requested, or encouraged the withdrawals. And the Board's own letters simply acknowledge the withdrawals, explain the Board's certification requirements, and set new deadlines for certification. These sorts of "routine informational" responses, FERC explained, do not amount to "coordination." *Id.* (cleaned up). We have said the same, as have two other circuits. *See Morrisville*, 136 F.4th at 1129; *N.C. Dep't of Env't Quality v. FERC*, 3 F.4th 655, 675 (4th Cir. 2021); *Cal. Water Bd.*, 43 F.4th at 936.

The District resists this conclusion in several ways, none convincing.

The District principally relies on our decision in *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019). There, we held that "a state waives its Section 401 authority when, pursuant to an agreement between the state and applicant, an applicant repeatedly withdraws-and-resubmits its request for water quality certification over a period of time greater than one year." *Id.* at 1103. But "*Hoopa Valley* was a very narrow decision flowing from a fairly egregious set of facts." *Morrisville*, 136 F.4th at 1127 (cleaned up). That case, on the one hand, involved a "written agreement" between a state and an applicant "with the express intent of circumventing section 401's one-year limitations period." *Id.* (cleaned up). This case, on the other hand, contains "no evidence of any mutual agreement, contractual or functional, to circumvent the statutory deadline and delay the certification process." *Id.*

The District claims that a functional agreement existed here because the Board was motivated to delay the certification process in order to ensure compliance with CEQA. But FERC reasonably found otherwise. It reasoned that the Board, if anything, had a contrary "interest in moving along the environmental-review process." February 2024 Order, 186 FERC ¶ 61,121, at P 22 n.61 (cleaned up); *see also id.* at P 22 & n.62. The longer the certification and licensing processes take, the longer applicants can continue to operate under interim licenses with presumably weaker environmental protections. *See Cal. Water Bd.*, 43 F.4th at 934–35; *Turlock Irrigation Dist. v. FERC*, 36 F.4th 1179, 1183 n.6 (D.C. Cir. 2022). The fact that the Board eventually denied the certification requests also undercuts the District's assertions of motive. That reality supports FERC's determination that the Board was "prepared" to act on the certification requests had the District not withdrawn them. *See* February 2024 Order, 186 FERC ¶ 61,121, at

---

[1] The District offers two more arguments on this score, but neither persuades. The District suggests that FERC's decision not to reopen the record conflicts with its prior position in *Dominion Cove Point LNG*, 118 FERC ¶ 61,007 (Jan. 4, 2007). But *Dominion Cove* concerned FERC's policy against filing answers to rehearing requests, not its policy against reopening the record. *See id.* at P 10. The District then notes that FERC had given it the option to submit "evidence of waiver" on remand. J.A. 402. In doing so, however, FERC did not also promise to waive its ordinary standards for reopening the record. *See* May 2024 Order, 187 FERC ¶ 61,095, at P 11.

P 19 (cleaned up). It "hardly suggests that the State was engaged in a scheme to circumvent the statutory deadline." *Morrisville*, 136 F.4th at 1128 (cleaned up).[2]

The District also relies on the fact that withdrawing and refiling had become a common practice in California. But it is one thing for applicants to routinely withdraw and refile certification requests on their own initiative. It is quite another for the Board to routinely *coordinate* that practice. And even if other cases involved coordination, FERC reasonably explained why it would not make much of that "generalized evidence." February 2024 Order, 186 FERC ¶ 61,121, at P 20. Waiver claims, FERC noted, are "highly dependent on the facts of the case, and the Commission considers each set of facts individually." *Id.*

Last, the District argues that FERC should have reopened the record at the rehearing stage to consider several newly discovered emails between the Board and PG&E from 2017. But the District does not dispute that PG&E could have submitted these emails much earlier, as part of its initial petition for relief. *Id.* at PP 15–17. And, as FERC found, the District fails to explain why it could not have obtained the emails from PG&E sooner. *Id.* at P 15 n.41. FERC did not abuse its discretion by refusing to reopen the record under these circumstances. *See Bhd. of Locomotive Eng'rs*, 482 U.S. at 278.

**B**

Coordination aside, the District claims that federal law preempts the Board's efforts to incorporate a years-long environmental-review process into its certification procedure. FERC reasonably rejected this argument as forfeited: Neither the District nor PG&E raised preemption in their initial petitions for relief, despite having every opportunity and every reason to do so. They first raised the preemption issue either on remand (in Yuba-Bear) or on rehearing (in Drum-Spaulding). *See* February 2024 Order, 186 FERC ¶ 61,121, at P 33; May 2024 Order, 187 FERC ¶ 61,095, at P 30.

The District asserts that the California Supreme Court's intervening decision in *County of Butte v. Department of Water Resources*, 514 P.3d 234 (Cal. 2022), represents a material legal development that should excuse forfeiture. But that decision, as FERC explained, addressed a separate preemption question (whether federal law preempts state-law challenges to the terms of a FERC-approved settlement agreement). *Id.* at 246; *see* February 2024 Order, 186 FERC ¶ 61,121, at P 34; May 2024 Order, 187 FERC ¶ 61,095, at P 31. It did not rise to the level of an extraordinary

---

[2] The District offers two additional theories of motive, but neither alters our conclusion.

First, the District argues that a withdraw-and-refile scheme gave the Board more time to develop new water-quality standards that it could impose as a condition of certification. But FERC reasonably explained why this theory of motive did not hold up. It noted that the Board has often conditioned certification on compliance with future regulations. *See* February 2024 Order, 186 FERC ¶ 61,121, at P 24; May 2024 Order, 187 FERC ¶ 61,095, at P 20. That practice, FERC reasoned, undercuts any speculation that the Board believed it needed to delay certification to impose new water-quality standards.

Second, the District claims that the Board had extra motive to delay certification in the Drum-Spaulding proceedings because there the Board—and not the applicant—was responsible for completing the CEQA process under California law. But FERC reasonably found that it was PG&E—and not the Board—that caused any delay by failing to provide key CEQA materials. *See* February 2024 Order, 186 FERC ¶ 61,121, at P 21 n.59.

change "go[ing] to the very heart of the case."  *Greater Bos. Television Corp. v. FCC*, 463 F.2d 268, 283 (D.C. Cir. 1971).

## III

For the foregoing reasons, the petitions for review are denied.

\*       \*       \*

Pursuant to D.C. Circuit Rule 36, this disposition will be unpublished.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Michael C. McGrail
Deputy Clerk

7